ENTERED ON THE DOCKET
DATE: 8/29/00

. . . . . COURT
. . . . . KANSAS

2000 AUG 25  P 4: 55

CLERK
B[...]DEPUTY
OF THE COURTS

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

DARLINE ADAMS,

        Plaintiff,

Vs.

        No. 96-4228-SAC

THE GOODYEAR TIRE & RUBBER
COMPANY, et al,

        Defendants.

### MEMORANDUM AND ORDER

This is an employment discrimination case in which the

plaintiff, Darline Adams, alleges that Goodyear Tire & Rubber Company,

("Goodyear"), subjected her to a sexually hostile work environment and

retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and

committed the tort of outrage. Invoking this court's supplemental

jurisdiction, the plaintiff also alleges that defendant Dewey Washington, a

co-employee, committed the tort of outrage and assaulted and battered her

at work. This case comes before the court on the following motions:

196

Goodyear's motion for summary judgment (Dk. 104); Washington's motion for summary judgment (Dk. 132); Plaintiff's motion in limine (Dk. 182); and Plaintiff's motion for review of the magistrate's order dated Sept. 8, 1998 (Dk. 174).

*Summary Judgment Standards*

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

Summary judgments "'should seldom be used in employment discrimination cases.'" *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (*quoting Smith v. St. Louis University*, 109 F.3d 1261, 1264 (8th Cir. 1997)). Because discrimination claims often turn on the employer's intent, courts ordinarily consider summary judgment inappropriate to settle an issue like intent, *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994); *see Courtney v. Biosound, Inc.*,

2

42 F.3d 414, 418 (7th Cir. 1994) ("[T]he summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." (quotation and citation omitted)). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.*, 969 F.2d 250, 253 (7th Cir. 1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir. 1988), *overruled on other grounds, McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995).

The facts relevant to the motions are included as necessary in the analysis which follows. Controverted facts have been construed in a light most favorable to plaintiff as the non-moving party. Immaterial facts and factual averments not properly supported by the record have been omitted.[1]

---

[1]

Plaintiff's allegations unsupported by citation to the record are insufficient to carry her burden. *See Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 773 n. 5 (10th Cir. 1999) (declining "to search for the proverbial needle in a haystack" in the absence of sufficient citation to record); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675 (10th Cir. 1998)(employee's conclusory statements in complaint and brief about employer's knowledge did not satisfy her burden on summary judgment; court need not consider pages in record other than those specifically cited to

3

*Goodyear's Liability for Sexual Harassment*

Section 703(a) of Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1). Although Title VII does not explicitly mention hostile work environment, a victim of a sexually hostile work environment may nevertheless bring a cause of action under Title VII. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To survive an employer's motion for summary judgment under Title VII, the record must support an inference of a sexually hostile work environment and a basis for employer liability. *Hirschfeld v. New Mexico Corrections Department*, 916 F.2d 572, 576-79 (10th Cir.1990). Where a court disposes of a claim based on the absence of employer liability, it need not resolve, apart from the question of employer liability, the issue of the presence of a hostile work environment. *See Ford v. West,* __ F.3d __, 2000 WL 1016647, at *6 (10th Cir. July 24, 2000); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

Several matters are not before this court. Although plaintiff

---

district court by employee).

4

originally asserted that Goodyear was liable for certain sexually harassing acts of co-employees other than Washington, plaintiff has since abandoned this claim.[2]  It is unclear whether plaintiff intends to assert a claim that Goodyear's supervisors participated in sexual harassment, but in the event such a claim is asserted, the record fails to support plaintiff's assertion.[3] Accordingly, the sole issue for the court's resolution regarding sexual harassment is whether Washington engaged in prohibited sexual harassment, and whether Goodyear is liable for Washington's acts.  The court addresses

_____

[2]

　　Plaintiff's  memorandum fails to respond to Goodyear's evidence that it took appropriate action when she reported such conduct, that such conduct did not occur because of her gender, and that such conduct was not severe or pervasive enough to constitute sexual harassment. Accordingly, the court finds plaintiff has abandoned this claim. *See Edwards & Associates., Inc. v. Black & Veatch, L.L.P.*, 84 F. Supp. 2d 1182, 1197 (D. Kan. 2000) (finding fraud claim abandoned where plaintiff failed to respond to defendant's arguments in summary judgment papers).

[3]

　　It is unclear whether plaintiff intends to assert a claim for supervisor harassment.  Such a claim would likely be beyond this court's jurisdiction, as no allegation of any harassment by any supervisor is included in plaintiff's EEOC complaint. (Dk. 106, Exh. 12).  Nonetheless, in an abundance of caution, the court has reviewed the record for support for such a claim, and has found none.  The acts taken by management and supported by the record, including staring at plaintiff, yelling at her, and failing to prevent all sexual language or actions in the workplace, are insufficient to constitute sexual harassment under Title VII.

5

Goodyear's liability first.

Goodyear alleges that it is not responsible for Washington's sexually harassing acts because it took prompt and effective action to remedy such harassment once it learned of them. In response to Goodyear's argument that it is not liable for Washington's alleged acts, plaintiff relies solely on two United States Supreme Court cases, *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Plaintiff asserts that because Goodyear has not shown entitlement to the employer defense created in those cases, it is liable for Washington's acts.

The court is familiar with these two cases, both of which deal with an employer's vicarious liability for harassment by a supervisor. Supervisor harassment is not the issue here. Neither *Faragher* nor *Burlington* addresses the employer's liability for a co-employee's acts or establishes an exclusive means by which an employer can avoid liability for workplace sexual harassment. Accordingly, *Faragher* and *Burlington* have no application to the facts in this case.

The Tenth Circuit has affirmed that an employer is liable for a hostile work environment based on a co-workers' harassment where the

6

employer knew, or should have known, about the violation and failed to
respond in a reasonable manner. *See Ford,* 2000 WL 1016647, \*6;
*Wright-Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1269 (10th
Cir.1998); *Adler,* 144 F.3d at 673. Where, as here, a plaintiff claims that the
employer negligently allowed a fellow employee to engage in sexual
harassment, the plaintiff must establish that her employer "had actual or
constructive knowledge of the hostile work environment but did not
adequately respond to notice of the harassment." *Adler,* 144 F.3d at 673
(internal quotations omitted). A plaintiff demonstrates actual employer
knowledge where the plaintiff has reported harassment to management-level
employees. *Id.*

An employer may be deemed to have constructive knowledge
of harassment where the pervasiveness of the harassment supports an
inference of employer knowledge. *Id.* Only when the acts of harassment are
" 'so egregious, numerous, and concentrated as to add up to a campaign of
harassment' " will the employer be liable for failure to discover the
harassment. *Id.* at 675 (quoting *Baker v. Weyerhaeuser Co.*, 903 F.2d 1342,
1346 (10th Cir. 1990)). To infer employer knowledge from only the level of
pervasiveness essential to make out a hostile environment claim would be

illogical because if that were the rule, knowledge would be attributed to employers in all cases of hostile work environment founded on pervasiveness. *Adler*, 144 F.3d at 673. Here, the plaintiff does not proceed on a constructive knowledge theory, and the court does not find that the alleged acts of harassment are so egregious, numerous, and concentrated as to add up to a campaign of harassment. Goodyear's liability, if any, thus rests on its actual knowledge.

### *Goodyear's Actual Knowledge*

It is uncontested that on June 5, 1996, plaintiff complained of sexual harassment to Goodyear's management. Plaintiff asserts that she reported sexual harassment prior to June 5, 1996, but the record cited by plaintiff reveals that her complaints prior to that date were solely to a union steward. (Dk. 170, Adams depo., p. 800-801).

For purposes of Title VII, an employer is deemed to be on notice of a hostile work environment if management level employees know about the alleged harassment. *See Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 577 (10th Cir.1990). The court rejects plaintiff's tacit and legally unsupported assertion that notice to a union steward should be deemed notice to a management-level employee. *See Holmes v. The Boeing*

8

*Company*, 166 F.3d 1221 (Table), 1999 WL 9760 (10th Cir. Jan. 12, 1999)(holding that notice to union steward of need for FMLA leave is not notice to employer). Although notice to a union representative can be deemed notice to the employer where the employer has formally designated the union steward as a person to receive complaints of sexual harassment, *see Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 785 (10th Cir. 1995), Goodyear has not so acted here. See Dk. 106, Exh. 15, ¶ 17(omitting union steward from list of persons authorized to receive such complaints). Accordingly, the first notice to Goodyear of plaintiff's complaints of sexual harassment was on June 5, 1996.

It is undisputed that on June 5, 1996, plaintiff reported to Goodyear management that Washington had previously slapped her once on the buttocks, had made inappropriate comments to her, and had engaged in an incident that day in the warehouse involving yelling, name-calling, and finger pointing.[4] (Dk. 106, Exh. 22, Adams depo., p. 40-44, 126, 282-83).

---

[4]
      Although plaintiff goes into detail in her deposition and her briefs about the acts which form the basis of her sexual harassment claim, the court finds it unnecessary to repeat them herein, and makes no finding whether plaintiff was or was not sexually harassed while working at Goodyear.

9

The next day, Adams reported some or all of the same complaints to a higher level supervisor, who, along with plaintiff's union chairman, reported the same to the highest-level manager in the Topeka warehouse. (*Id.*, at 454-55; Dk. 107, Exh.24, Tice depo., p. 26-27; Dk. 107, Exh.26, Barger depo., p. 25-27; Dk. 107, Exh. 27, Holthaus depo., p. 35-36). Thereafter, Goodyear investigated the events which occurred on June 5, 1996.

*Goodyear's Response*

By June 10, 1996, five days after plaintiff first reported sexual harassment, Goodyear had concluded its investigation. It is undisputed that on June 10th, Goodyear verbally warned Washington that he would be terminated in the event of any further inappropriate behavior, reminded him of Goodyear's policy about sexual harassment, handed him a copy of that policy along with a reprinted pamphlet describing sexual harassment and a memo regarding Goodyear's philosophy of teamwork, and instructed him not to talk to plaintiff, but to use a supervisor as a middleman if he needed to communicate with her. (Dk. 110, p. 5, ¶ 14, uncontroverted by plaintiff).

During a meeting that same day with with Jerry Holthaus, (a warehouse manager), Larry Tice, (the warehouse operations manager), and Mike Barger, (plaintiff's union chairman), plaintiff was informed that

10

Goodyear would be monitoring the situation, that she should let them know

if she had any further problems, that she did not have to talk to Washington

if she did not want to, and that she was to use a supervisor as a middleman if

she needed to communicate with him. (*Id.*; Dk. 110, p. 5, ¶ 15,

uncontroverted by plaintiff).

To constitute a reasonable response, the employer's remedial

and preventative action must be reasonably calculated to end the harassment.

*Ford*, 2000 WL 1016647, at *6. "Plaintiff bears the burden of presenting

evidence establishing a genuine issue of fact that the employer's response

was unreasonable. *Wilson v. Tulsa Junior College*, 164 F.3d 534, 541 n. 4

(10th Cir. 1998)." *Id*. The fact that an employer's response actually stops

the harassment shows the effectiveness of that response, which in turn

evidences reasonableness of response. *Adler*, 144 F.3d at 676.

The record here clearly establishes that Goodyear's response to

plaintiff's complaints was effective in stopping Washington's alleged

behavior. Plaintiff admits that she had no communications whatsoever with

Washington after June 5, 1996, and that Washington did not engage in any

inappropriate behavior with her after that same date. (Dk. 106, Exh. 22,

Adams depo., p 88, 131, 218-220, 223-24, 227). Plaintiff not only testified

11

to her conclusion that Washington never sexually harassed her after June 5,
1996, but also testified repeatedly that Washington had not engaged in any
of the specific and numerous acts alleged to constitute sexual harassment.
*Id.* The record further shows that in October of 1996, plaintiff confirmed to
the Employment Manager in Goodyear's Topeka Human Resources
Department that although she still felt uneasy working around Washington,
he had not done anything inappropriate since management talked to him.
(Dk. 107, Exh. 28, Stotts Depo., p. 43-45; (Dk. 106, Exh. 22, Adams depo.,
p. 734). The effectiveness of Goodyear's response is thus readily evidenced
by cessation of Washington's harassment.

Despite the fact that Washington ceased any harassment after
June 5, 1996, plaintiff alleges that Goodyear's response was inadequate, for
a host of reasons. Plaintiff first implies that the investigation was conducted
too hastily. The court finds no fault in the fact that Goodyear's investigation
was concluded five days after it began. Once an employer is apprized of the
occurrence of sexually offensive conduct in the workplace, Title VII imposes
an affirmative duty on that employer to investigate and to take prompt and
appropriate corrective action. *See Adler*, 144 F.3d at 676. *Compare* 29
C.F.R. § 604.11(d) (requiring "immediate" appropriate action). Thus, the

12

fact that the investigation was completed promptly, within five days after Goodyear first received notice of plaintiff's complaints, cuts in favor of, instead of against, the reasonableness of the investigation.

Plaintiff additionally contends that Goodyear's response was inadequate because Washington was not disciplined by means of a written reprimand. It is not necessary, however, for an employee to be disciplined for an employer's response to be adequate. *See Baty v. Willamette Industries, Inc.*, 172 F.3d 1232, 1242-1243 (10th Cir. 1999)("While we do not suggest that disciplinary action is always required to establish the adequacy of the employer's response, it obviously is relevant to our analysis of the adequacy of that response). *See Adler*, 144 F.3d at 676 (noting scheduling changes and transfers have been held reasonable employer responses). Here, Goodyear's verbal warnings to Washington were sufficient to stop any harassment, evidencing the fact that a written reprimand was unnecessary.

Plaintiff next contends that Goodyear's warning to Washington that he could be fired was merely illusory, because Washington was a permanent employee with high seniority who could not be terminated without having received a written reprimand. The record cited by plaintiff

13

fails to support this conclusion. (*See* Dk. 170, Exh. 4, Grievance Procedure, stating that "if employees are terminated they will be furnished a written statement of such action"); *see also* Dk. 176, Exh. H, Tice depo., p. 17-18, agreeing that permanent employees would continue to be employed at Goodyear "unless [they] break the rules of the company..."). The court cannot find, based upon the record before it, that employees with high seniority could not be terminated without having first received a written reprimand.

Plaintiff additionally asserts that an effective response would have included transferring Washington to another department, "because he had a high seniority status so he could have bid on many posted jobs." (Dk. 169, p. 2, ¶ 17.) An employee's ability to bid on other jobs has little, if anything, to do with the determination whether the employer should have involuntarily transferred that employee. As the Tenth Circuit has repeatedly cautioned, the court's role is "not to act as a 'super personnel department' that second guesses employers' business judgments." *Simms v. Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999) (citation omitted). Further, according to plaintiff's own testimony, it would have been a violation of the union agreement for Goodyear to have involuntarily transferred Washington. (Dk.

14

106, Exh. 22, Adams depo., p. 540-542). To force Washington to bid for an open position in another location would be no different than involuntarily transferring him, which Goodyear was prohibited from doing. Under these circumstances, it was more than reasonable for Goodyear not to have transferred Washington.

Plaintiff has failed to satisfy her burden of presenting evidence establishing a genuine issue of fact that Goodyear responded unreasonably. *See Adler*, 144 F.3d at 676. The evidence in the record simply cannot support plaintiff's claim that her employer had actual or constructive knowledge of the alleged hostile work environment before June 5, 1996. The record further fails to present a material question of fact whether Goodyear adequately responded when it received notice of the alleged harassment. Because plaintiff has failed to provide facts to support a basis for employer liability, the court will grant Goodyear's motion for summary judgment on plaintiff's sexual harassment claim.

*Retaliation*

Goodyear also seeks summary judgment on plaintiff's claim of retaliation. Plaintiff alleges that she engaged in protected conduct by reporting Washington's behavior to Goodyear's management on June 5,

15

1996. The retaliation is alleged to consist of increasing her work load,
refusing to transfer herself or Washington, tolerating warehouse personnel
staring at her, failing to investigate her complaints, intimidating her,
tolerating conduct meant to drive her out of the warehouse, laying her off,
failing to recall her immediately, then recalling her to an undesirable and
dangerous job at the plant, instead of in the warehouse. (Dk. 169, p. 20).[5]

Title VII prohibits an employer from discharging an employee
who opposes any acts of discrimination prohibited by the statute. 42 U.S.C.
§ 2000e-3(a). A prima facie case of retaliation under these statutes is made
by showing "(1) protected employee action; (2) adverse action by an
employer either after or contemporaneous with the employee's protected
action; and (3) a causal connection between the employee's action and the
employer's adverse action." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324

---

[5]

Plaintiff elsewhere asserts that the retaliatory events are set out in
detail in her factual assertions and her affidavit. (Dk. 169, p. 35). The court
will not, however, take upon itself plaintiff's burden to specify which acts
she alleges were taken in retaliation for her protected conduct, and will not
accept plaintiff's tacit assertion that all adverse actions encompassed in
unspecified assertions of fact, and without citation to the record, constitute
retaliation. However, the court's ruling would be no different if the alleged
retaliatory acts included all those specified by defendant Goodyear. *See*
Dk. 110, p 28-33.

(10th Cir. 1997). Upon such a showing, the burden shifts to the defendant to produce a legitimate, nonretaliatory reason for its employment decision. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). The burden then shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employer's decision, but instead, that the decision was made for retaliatory reasons. This burden may be met either by direct evidence of the employer's retaliatory motive or by evidence that the proffered reason is pretextual. *See id.* at 1396.

The court agrees that informal complaints to superiors or the use of the employer's internal grievance procedures constitutes protected activity under Title VII. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000); *Robbins v. Jefferson County School Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999). Accordingly, plaintiff's complaint to Goodyear management on June 5, 1996 constitutes protected conduct.

Defendants allege that plaintiff suffered no adverse action. "In recognition of the remedial nature of Title VII, the law in this circuit liberally defines adverse employment action. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)." *Jeffries v. State of Kansas*, 147 F.3d 1220, 1232 (10th Cir. 1998). The Tenth Circuit has declined to require that an

17

adverse employment action be "material" in order to be actionable. *Jeffries*,

147 F.3d at 1232. Instead, the Tenth Circuit takes a case-by-case approach

to determining whether a given employment action is "adverse." *See, e.g.,*

*Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996)

(showing of adverse employment action where employee required to "go

through several hoops" in order to obtain severance benefits); *Berry*, 74

F.3d at 986-87 (showing of adverse employment action where employer

reported plaintiff of suspected crime thereby creating risk of humiliation and

damage to reputation); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th

Cir. 1993)(sufficient adverse employment action where plaintiff was

reassigned against her wishes).

Although the Tenth Circuit liberally defines an "adverse

employment action," it does not extend to "'a mere inconvenience or an

alteration of job responsibilities.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d

527, 532 (10th Cir. 1998). *See Heno v. Sprint/United Management*

*Company*, 208 F.3d 847 (10th Cir. 2000) (affirming summary judgment

where plaintiff worked in the same job, for the same pay, with the same

benefits, but defendant had moved her desk, monitored her calls, been

"chilly" towards her, and suggested that she might do better in a different

18

department).

Co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute "adverse employment action" for purposes of a retaliation claim. *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998). "An employer can only be liable for co-workers' retaliatory harassment where its supervisory or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions." *Id.*

After carefully reviewing the record, the court finds much of the conduct complained of insufficient to constitute adverse action, as is required for a Title VII retaliation claim. Although a factual dispute exists as to whether Goodyear investigated plaintiff's complaints on June 5th regarding Washington's acts prior to that date, (*See* Dk. 170, Tice depo., p. 51), any such failure did not disadvantage plaintiff because the investigation Goodyear admittedly undertook effectively stopped Washington's offensive behavior. Plaintiff's complaint that Goodyear failed to transfer her or Washington has been addressed above. Failing to staff her position while she complained to management on June 5th (resulting in an increased

19

workload), staring at her on occasion, and patrolling her work area are insufficient to constitute adverse action. These and similar acts effected no change in the amount of compensation plaintiff received, no change in the fundamental terms and conditions of her employment,[6] and constitute nothing but inconveniences, alteration of her job responsibilities, and increased tensions, which are of insufficient degree here to constitute adverse action. *See Jeffries*, 147 F.3d at 1232.

Further, plaintiff has failed to show that Goodyear's supervisory or management personnel either orchestrated the harassment by co-employees or knew about it and acquiesced in it in such a manner as to condone and encourage the co-workers' actions. Instead, the record shows that each time plaintiff reported to management specific incidents of what she believed to be retaliation by co-employees, Goodyear took prompt and effective corrective action to stop the actions complained of. (Dk. 106, Exh.

---

[6]

Plaintiff may contend that her pay was docked when she missed work and when she was laid off. This obviously affected her compensation, but plaintiff has failed to show that she was treated any differently in this respect than similarly situated warehouse employees, who were subject to the terms and conditions of the collective bargaining agreement. Thus Goodyear's non-payment for leave or lay off time does not support plaintiff's claim of retaliation. *See Berry v. General Motors Corp.*, 838 F. Supp. 1479, 1498 (D. Kan. 1993).

22, Adams depo., p. 131, 447-48, 582-84, 712, 728; Dk. 107, Exh. 23,

Washington depo., p. 110-115; Dk. 107, Exh. 27, Holthaus depo., p. 106-

07).

Plaintiff's layoff and subsequent recall to a less desirable job is,

however, sufficient to constitute adverse action. This action was taken by

Goodyear's management. Plaintiff's burden is thus to show a causal

relationship between the two. "The requisite causal connection may be

shown by producing 'evidence of circumstances that justify an inference of

retaliatory motive, such as protected conduct closely followed by adverse

action.'" *McGarry v. Board of County Com'rs of County of Pitkin,* 175

F.3d 1193, 1201 (10th Cir. 1999)(*quoting Burrus v. United Telephone Co.*

*of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)). "In other words, [the

plaintiff] must present some evidence that her employer undertook the

adverse employment action for the purpose of retaliation." *Bullington v.*

*United Air Lines, Inc.,* 186 F.3d 1301, 1320-1321 (10th Cir. 1999).

It is undisputed that plaintiff was laid off from the warehouse

on January 13, 1997, was offered recall to the plant in August of 1997, and

began working in the plant in September of 1997. Here, plaintiff's lay off

did not occur until over six months after her June 5th, 1996 complaint to

21

Goodyear management,[7] and her recall to the plant was over a year after such complaints. "Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). Events remote in time from a complaint undercut an inference of retaliatory motive. *See Burrus*, 683 F.2d at 343. Plaintiff's lay off and recall did not occur within a close enough proximity of time to her protected acts to raise an inference of causation. No additional evidence of causation has been shown.

Further, Goodyear has presented unrebutted evidence that plaintiff was one of fourteen employees laid off from the warehouse on January 13, 1997. (Dk. 107, Exh. 32). That reduction in force was due to the fact that a line of tires was being moved from Topeka. (*Id.*) Employees were selected for lay off according to lowest seniority, in accordance with the terms of the collective bargaining agreement then in effect. (*Id.*) Before plaintiff was recalled, a new collective bargaining agreement took effect, which permitted employees laid off from the warehouse to be recalled to the

---

[7]

Plaintiff has not shown that she engaged in any protected conduct after June of 1996.

22

plant. (Dk. 170, Adams affidavit). By that summer, nine of the fourteen laid-off employees had been recalled to the warehouse. (Dk. 107, Exh. 32; Dk. 170, Adams affidavit). Those nine had greater seniority than did plaintiff. In August, the remaining five laid-off employees were offered recall to the plant. Plaintiff was not the most senior employee of that group. (*Id.*; Dk. 107, Exh. 33.) Plaintiff and one other recalled employee were assigned to helper positions in the plant. (*Id.*)

Although plaintiff would rather have been assigned to the warehouse or to an another available position in the plant, there is no evidence that Goodyear's decision to assign her to a helper position in the plant was in retaliation for plaintiff's complaints. The evidence shows that this decision was based on the Employment Manager's perception that other available positions required greater upper body strength than did the helper position, and on his recollection that other women had had difficulty in such positions in the past. (*Id.*) None of the evidence regarding plaintiff's lay off and recall has been shown to be pretextual, nor has any direct evidence of the employer's retaliatory motive been shown.

Goodyear has thus met its burden to show that it had a legitimate business reason for laying plaintiff off, and for recalling her at the

23

time and to the position it did. That same evidence establishes that

Goodyear treated plaintiff similarly to employees who had not complained of

sexual harassment. Under these circumstances, even if there were some

inference of a causal connection between plaintiff's complaint and any acts

taken by Goodyear, Goodyear's legitimate, non-retaliatory reason for its acts

would entitle it to summary judgment.

*Outrage*

Goodyear additionally seeks summary judgment on plaintiff's

claim that it is liable for outrage. This claim is premised upon the allegation

that Goodyear knowingly allowed Washington's allegedly harassing conduct

to occur, and did nothing about it. Because resolution of this claim turns on

facts already determined by this court in addressing the Title VII issues, the

court will consider this supplemental jurisdiction claim.

To establish a claim of intentional infliction of emotional

distress under Kansas law, a plaintiff must demonstrate four elements: (1)

the conduct of defendant must be intentional or in reckless disregard of

plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be

a causal connection between defendant's conduct and plaintiff's mental

distress; and (4) plaintiff's mental distress must be extreme and severe.

24

*Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257, 978 P.2d 922 (1999).

Generally, an employer is not liable for the intentional torts of an employee unless they are committed while the employee is acting within the scope of his employment or in furtherance of his employer's business, and not with a purpose personal to the employee. *Williams v. Community Drive-In Theater, Inc.*, 214 Kan. 359, syl. 3, 520 P.2d 1296 (1974). The Tenth Circuit has not allowed cases alleging harassment by co-workers to proceed on a theory of vicarious liability. *See e.g.*, *Bolden v. PRC Inc.*, 43 F.3d 545, 554 (10th Cir. 1994), *cert. denied*, 516 U.S. 826 (1995)(applying Kansas law); *Anspach v. Tomkins Indus., Inc.*, 817 F. Supp. 1499, 1507 (D. Kan. 1993), aff'd, 51 F.3d 285 (10th Cir. 1995) (Table) (employer is not vicariously liable for extreme and outrageous treatment of one employee by another employee). *See also Braun v. Dillon Companies, Inc.*, 1995 WL 261142, at *14 (D. Kan. Apr. 19, 1995); *Meininger v. Swift-Eckrich, Inc.*, 1995 WL 42700, at *5 (D. Kan. Jan. 6, 1995).

Plaintiff has not cited any Kansas case in which an employer has been held liable for the outrageous conduct of a co- employee. In fact, plaintiff has failed to respond to Goodyear's showing of non-liability, except

25

to conclusorily allege that Goodyear knew of Washington's outrageous behavior and failed to stop it.[8]  Given the court's finding above that there is no question that Goodyear promptly and effectively investigated after it first learned of Washington's behavior, and that Washington ceased all inappropriate behavior after Goodyear's warnings to him, plaintiff's proposition lacks factual support. No evidence shows that Goodyear either sanctioned, condoned, or confirmed any alleged harassing behavior by Washington.  Plaintiff's claim that Goodyear is vicariously liable for Washington's acts cannot stand, either factually or legally.

To the extent plaintiff's claim is premised on Goodyear's own behavior, the court finds that the alleged acts are insufficient to constitute outrage, as a matter of law.  As discussed above, plaintiff's allegation that Goodyear failure to respond to and correct Washington's behavior is unsupported by the record.  But even if Goodyear negligently failed to stop harassment, that act is not sufficiently outrageous to support plaintiff's claim. See *Anspach*, 817 F. Supp. at 1507; *Farris v. Board of County Com'rs of*

---

[8]

     Because of her failure to address this issue, the court would be justified in finding that plaintiff has waived her claim that Goodyear is liable for Washington's outrageous acts.

26

*Wyandotte County, Kan.*, 924 F. Supp. 1041, 1051(D. Kan. 1996).
Goodyear's alleged perpetuation of the alleged sexual harassment or
retaliation is similarly insufficient to support an outrage claim, *see Beam v.*
*Concord Hospitality, Inc.*, 873 F. Supp. 491, 502 (D. Kan. 1994); *Anspach*,
817 F. Supp. at 1507, as is Goodyear's business decision to place Adams in
a helper decision in the plant, *see Anspach,* 817 F. Supp. at 1508; *Deghand*
*v. Wal-Mart Stores, Inc.,* 926 F. Supp. 1002, 1019 (D. Kan. 1996).
Accordingly, summary judgment is warranted on plaintiff's outrage claim.

*Defendant Washington's Motion for Summary Judgment*

Defendant Washington's motion for summary judgment seeks
the court's determination of which acts he engaged in, and of whether those
acts are sufficient to constitute the torts of outrage and/or assault and battery
under Kansas law. Such decisions, and the facts upon which they are based,
are not identical to those set forth above and would thus require additional
time and resources of this court.

Having dismissed all claims over which it has original
jurisdiction, the court declines to exercise supplemental jurisdiction on the
plaintiff's state law claims against defendant Washington, 28 U.S.C. §
1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966)

27

("[I]f the federal claims are dismissed before trial,...the state claims should be dismissed as well."). When the federal claims have dropped from the case, the seminal teaching of *Gibbs* is that the most common response is to dismiss the state law claims without prejudice. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997). The parties do not argue any unique circumstances, and the court finds none, that would justify exercising supplemental jurisdiction over plaintiff's state law claims against the remaining non-diverse defendant.

IT IS THEREFORE ORDERED that defendant Goodyear's motion for summary judgment (Dk. 104) is granted;

IT IS FURTHER ORDERED that defendant Washington's motion for summary judgment (Dk. 132) is denied as moot;

IT IS FURTHER ORDERED that Plaintiff's motion in limine (Dk. 182), and Plaintiff's motion for review of the magistrate's order dated Sept. 8, 1998 (Dk. 174), which both concern evidence to be presented at trial, are denied as moot.

IT IS FURTHER ORDERED that plaintiff's claims against defendant Washington are dismissed without prejudice.

Dated this 25 day of August, 2000, Topeka, Kansas.

Sam A. Crow, U.S. District Senior Judge

29